FILED
2019 Jul-17 PM 01:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| ANITA STUDDARD HUNT, | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } Civil Action No.: 4:18-CV-1067-RDP |
| | } |
| NANCY A. BERRYHILL, | } |
| Acting Commissioner of | } |
| Social Security, | } |
| | } |
| Defendant. | } |

## MEMORANDUM DECISION

Plaintiff Anita Studdard Hunt ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("the Commissioner") denying her claim for a period of disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). Based on this court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed her application for DIB on June 24, 2015, alleging a disability onset date of December 31, 2014. (R. 60-1). The Social Security Administration ("SSA") denied the initial request for DIB on August 8, 2015. (R. 69-71). Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (R. 83-4), and ALJ Lisa M. Johnson held the hearing on June 22, 2017. (R. 34). In her decision dated October 4, 2017, the ALJ determined that Plaintiff was not under a disability within the meaning of Sections 216(i) and 223(d) of the Social Security Act. (R. 28). As the Appeals Council denied Plaintiff's request for review on May 17, 2018, which

was the final decision of the Commissioner (R. 1-3), the Commissioner's decision is now a proper subject for this court's appellate review.

**II.     Statement of Facts**

Plaintiff, who was born on December 25, 1965, was 49-years-old when she filed her request for DIB and 51 at the time of the ALJ's decision. (R. 20, 28, 59). Plaintiff received her GED in 1991 and held two different jobs over a fifteen-year period: an assembly line worker from 2000 to 2002 and cashier/cook at a gas station from 2005 to 2015. (R. 160). Plaintiff alleges, and the ALJ found, that she suffers from morbid obesity, sciatica, hypertension, carpal tunnel syndrome, osteoarthritis, neuropathy, and obstructive sleep apnea. (R. 22).

Plaintiff's medical record begins with a January 20, 2014 visit to Shellie Gilbreath, NP-C,[1] complaining of pain in her left shoulder. (R. 277-78). During the physical exam, Gilbreath found tenderness in the lower cervical spine resulting in limited range of motion in the area. (R. 279). Gilbreath prescribed a ten-day-amount of prednisone for Plaintiff's shoulder joint pain and ordered Plaintiff to return to the office if no improvement occurred. (R. 279). Plaintiff returned to Gilbreath's office a month later, and despite reviewing the past shoulder joint pain, Gilbreath only assessed Plaintiff's bronchitis issue in the report. (R. 276-77). Shortly thereafter, Plaintiff again sought respite from shortness of breath and congestion. (R. 272). Once again, despite reviewing shoulder joint pain, Gilbreath did not create a plan for treatment related to that condition; instead, Gilbreath prescribed more medication for bronchitis and ordered three-weeks of medication for hypertensive disorder. (R. 274).

On April 4, 2014, Plaintiff returned with additional complaints, including edema and abnormal weight gain. (R. 269-70). In her assessment, Gilbreath found that Plaintiff suffered from

---

[1] NP-C is an abbreviation for a Certified Nurse Practitioner.

edema in the lower extremities and abnormal weight gain; as a result, Gilbreath started Plaintiff on Lasix and potassium chloride tablets for thirty days. (R. 272). Gilbreath instructed Plaintiff to return to the office four days later to monitor her weight and blood pressure (R. 272); however, Plaintiff's next visit did not occur until April 30. (R. 267). Again, Gilbreath prescribed a month-supply medication for Plaintiff's edema in addition to Adipex to treat her abnormal weight gain. (R. 266).

A day after her June 9 visit for a prescription refill, Plaintiff was in a motor vehicle accident. She sought treatment for resulting neck and right shoulder pain, in addition to the previous shoulder joint pain, during a July 1 visit to Gilbreath. (R. 261, 264).[2] After a physical exam that revealed limited range of motion in the right shoulder, Gilbreath ordered Plaintiff an MRI for her cervical spine and shoulder. (R. 263). Gilbreath prescribed a thirty-day starter pack of Gralise for Plaintiff's neuropathy. (R. 263). Three weeks later, Plaintiff returned seeking treatment for her previous ailments in addition to right elbow pain. (R. 258). Gilbreath examined Plaintiff and found that the pain caused Plaintiff moderate distress and limited her range of motion. (R. 260). Moreover, the nurse practitioner prescribed further medication for obesity. (R. 260).

Plaintiff underwent the two MRI exams on August 13, 2014. (R. 233). The exams revealed that Plaintiff suffers from mild degenerative disk disease in her neck and osteoarthritis in her right shoulder. (R. 233-34). Following a reference from her visit with Gilbreath on August 18 to discuss the MRI results (R. 255), Plaintiff saw Dr. Seth Spotinitz, who diagnosed Plaintiff with moderate right carpal tunnel syndrome on September 16, 2014. (R. 240, 281). Plaintiff returned to Gilbreath in September and December 2014 without any new diagnoses. Plaintiff's last visit to Gilbreath before she applied for DIB occurred June 23, 2015.[3] (R. 246). During this visit, Gilbreath noted

---

[2] Plaintiff told her physician that she did not go to the emergency room following the motor vehicle accident. (R. 262).
[3] Plaintiff continued to visit Gilbreath for refills on prescriptions, such as her November 2015 visit. (R. 319).

3

that Plaintiff gained 34 pounds since her previous visit in September 2014. (R. 247). Also, Plaintiff complained of back pain for the first time, and Gilbreath prescribed both tramadol and prednisone to treat the pain. (R. 248).

On the following day, Plaintiff filed for disability. (R. 59). She visited Dr. Jimmy A. Oguntuyo for a disability medical examination on August 20, 2015. (R. 311). After a review of systems, physical exam, a "suboptimal" lower back x-ray that showed no gross malalignment, and review of a range of motion chart, Dr. Oguntuyo found that Plaintiff suffered from morbid obesity, sciatica, carpal tunnel syndrome, edema of the lower extremities, osteoarthritis, neuropathy, sleep apnea, and hypertension. (R. 313-14). Consequently, Dr. Oguntuyo found that Plaintiff "may not be able to perform any meaningful work-related activities that involve prolonged standing, sitting, walking, lifting, carrying, [and] handling objects." (R. 313). Also, Dr. Oguntuyo wrote that Plaintiff may benefit from the use of a walker for support, stability, and mobility; however, he did not prescribe Plaintiff an assistive device. (R. 313).

The Disability Determination Service also sent Plaintiff to Dr. Anand Iyer for an examination that took place April 1, 2017. (R. 327). After physical examination and a range of motion determination, Dr. Iyer found a history of bilateral carpal tunnel syndrome and hypertension confirmed by records; however, he did not confirm record support of Plaintiff's history of neck pain, left shoulder pain, back pain, hip pain, and left knee pain. (R. 329). Dr. Iyer did, however, note that Plaintiff had "difficulty getting on and off the exam table," "difficulty opposing her digits, making a fist, squeezing my fingers, buttoning, and buckling," abnormal gait, and inability to "walk on heels and tiptoes." (R. 328). Ultimately, Dr. Iyer concluded that Plaintiff "may have some impairment of functions involving sitting, standing, walking, climbing steps,

4

bending, lifting, twisting, carrying, reaching overhead, handling, buttoning, buckling, and opening jars." (R. 329).

## III. ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" involves significant physical or mental activities, and "gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572. If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.*

Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. When the claimant meets these criteria, the ALJ will find that the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability after the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). Then, in the fourth step, the ALJ evaluates whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ finds that the claimant is capable of performing past relevant work,

then the claimant is deemed not disabled. *Id.* On the other hand, if the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v).

In the last portion of the test, the ALJ must decide whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In this case, the ALJ first determined that Plaintiff meets the insured status requirements of the Act through September 30, 2018. (R. 22). Next, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 31, 2014, the alleged onset date of disability. (R. 22). The ALJ also determined that Plaintiff has the following medically determinable severe impairments: morbid obesity, sciatica, hypertension, carpal tunnel syndrome, osteoarthritis, neuropathy, and obstructive sleep apnea. (R. 22). However, the ALJ reasoned that the record does not demonstrate that Plaintiff has an impairment or combination of impairments that meet or medically equal the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. (R. 23).

After considering whether Plaintiff's symptoms were reasonably consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR 404.1529 and SSR 16-3p, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform work at the light exertional level subject to additional limitations. (R. 23, 26). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements and other allegations concerning the

intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. (R. 24).

At the final step, the ALJ concluded that Plaintiff is not capable of performing past relevant work, when considering her age (which the ALJ properly changed to closely approaching advanced age), education, work experience, and RFC, in addition to the Vocational Expert's testimony, there are existing jobs in significant numbers in the national economy that Plaintiff can perform. (R. 26-27). Having found that Plaintiff has physical limitations that do not rise to the level of a disability and that she is capable of making a successful adjustment to other work available in significant numbers in the national economy, the ALJ held that Plaintiff has not been under a disability, as defined by the Act, from the alleged onset date of disability to the date of decision. (R. 25-28).

### IV. Plaintiff's Argument for Remand

Plaintiff argues that the ALJ's factual findings are not supported by substantial evidence or correct legal standards because: (1) the ALJ failed to accord proper weight to the opinions of the consulting physicians; (2) the ALJ failed to properly consider Plaintiff's obesity in combination with other impairments; (3) the ALJ did not base her RFC decision that Plaintiff can perform light work on substantial evidence, and (4) the ALJ erred by not applying Medical-Vocational Rule 201.10. (Doc. #8 at 1).[4] The court addresses each argument, in turn.

### V. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th

---

[4] The Plaintiff also argues that the ALJ failed to properly consider her "excellent work history"; however, neither the Eleventh Circuit nor the SSR requires an ALJ to consider excellent work history in the determination of Plaintiff's subjective complaints. *See Dudley v. Berryhill*, No. 4:17-CV-01424-AKK, 2019 WL 1281194, at *7 (N.D. Ala. Mar. 20, 2019).

7

Cir. 1982), and whether the ALJ applied the correct legal standards. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In other words, the district court may not reconsider the facts, re-evaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; more precisely, "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**VI. Discussion**

A claimant "bears the burden of proving that she is disabled, and consequently, [she] is responsible for producing evidence in support of [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a)). Upon review of the record as a whole, the court concludes that Plaintiff has not met this burden; thus, the court holds that the Commissioner's decision is supported by substantial evidence and is in accordance with applicable law.

## A. The ALJ Properly Afforded Little Weight to the Opinions of the Consulting Doctors.

The weight the ALJ gives to a medical source's opinion depends on three factors: (1) the medical source's relationship with the claimant, (2) the evidence the medical source presents to support his opinion, and (3) the degree of consistency between the medical source's opinion and the medical evidence in the record as a whole. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c)(2). Furthermore, while the ALJ must give the opinion of a treating physician considerable weight unless "good cause" is shown to the contrary, the ALJ does not owe great weight to the opinion of a consulting physician who examines a claimant only one time. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004); *Denomme v. Comm'r Soc. Sec.*, 518 F. App'x 875, 877 (11th Cir. 2013) (holding that the ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician). By definition, a treating physician is a claimant's "own physician…who has provided [claimant] with medical treatment or evaluation and who has…an ongoing relationship with [claimant]." *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 n.3 (11th Cir. 2006) (quoting 20 C.F.R. § 404.1502).[5]

In this case, the ALJ stated that she gave little weight to the opinions of both Dr. Oguntuyo and Dr. Iyer, and the ALJ stated with clarity her reasons for giving such little weight to those opinions. Neither Dr. Oguntuyo nor Dr. Iyer fall under the definition of Plaintiff's treating physician; rather, they are consulting physicians who examined the claimant on one occasion. The ALJ explained that Dr. Oguntuyo's report is "insufficiently specific" and inconsistent with the Plaintiff's treatment records and his own x-ray evidence. The ALJ explained that Dr. Iyer's opinion

---

[5] The ALJ also determines the weight of a physician's conclusory statements based on the extent to which the findings are supported by clinical/laboratory findings and are consistent with other evidence within the record. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986).

9

was based in part on newly reported problems which were inconsistent with the record as a whole. Thus, since neither physician is Plaintiff's treating physician and the evidence provided by both doctors contradicts the medical record as a whole, the overall record provides substantial evidence that the ALJ properly afforded little weight to the consulting physicians' opinions.

### B. The ALJ Properly Considered Plaintiff's Combination of Impairments, Including Obesity, at Step Three of the Inquiry.

At step three of the process, the ALJ must determine whether a claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments describes ailments that are considered severe enough to prevent a person from completing "any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). If a claimants' impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1520(a)(4)(iii), (d). But importantly, a claimant bears the burden of proving that her impairments meet or equal one included in the Listing. *See Kalishek v. Commissioner*, 470 Fed. Appx. 868, 870 (11th Cir. 2012); *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).

To prove a listed impairment or equivalent combination, Plaintiff must (1) establish that she has a diagnosed condition that is included in the Listing and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable Listing and duration requirement. *See* 20 C.F.R. § 404.1525(a)-(d); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Additionally, to show that a combination of impairments equals an enumerated impairment, the medical findings must be "at least equal in severity and duration to the listed findings." 20 C.F.R. § 404.1525(a)-(d); *see Wilson*, 284 F.3d at 1224; *see also Sullivan v. Zebley*,

493 U.S. 521, 530 (1990) (holding that an impairment manifesting only some of [a Listing's] criteria, no matter how severely, does not qualify). More specifically, "obesity may increase the severity of co-existing or related impairments to the extent that the combination of impairments meets the requirements of a listing." SSR 02-1p at *5.

In this case, Plaintiff argues that the ALJ failed to discuss and evaluate her obesity and accompanying impairments in accordance with SSR 02-1p in step three of the analysis. The court disagrees.

The ALJ explicitly mentioned in step two of her analysis that Plaintiff suffered from morbid obesity. Furthermore, at step three the ALJ made clear that obesity is not a listed impairment; however, she did consider the non-listed impairments, including obesity, in combination with Plaintiff's other impairments. Moreover, while determining Plaintiff's RFC, the ALJ made a blanket statement the she considered all symptoms suffered by the Plaintiff and specifically mentioned Plaintiff's weight loss medication in her reasoning for Plaintiff's limited light exertional RFC level. Thus, the court concludes that the ALJ properly considered Plaintiff's obesity – both at step three and throughout the remainder of the analysis.

> C. **The ALJ's Decision That Plaintiff Can Perform a Limited Range of Light Exertional Work Is Supported by Substantial Evidence.**

Residual functional capacity is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. The RFC represents the most an individual can do despite her limitations. 20 C.F.R. § 416.945(a). When evaluating a claimant's RFC, the ALJ must base her findings on "all of the relevant medical and other evidence," including a claimant's testimony regarding the limitations imposed by her impairments. 20 C.F.R. § 416.945(a)(3); *see Phillips*, 357 F.3d at 1238.

This court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir.2005). Rather, it must defer to the Commissioner's decision if it is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). Furthermore, there is no requirement that the ALJ specifically refer to every piece of evidence that she used to render her decision; instead, the ALJ's decision has to demonstrate to this court that she considered the claimant's medical condition in its entirety. *Adams v. Commissioner*, 586 Fed. Appx. 531, 533 (11th Cir. 2014).

In this case, the ALJ determined that Plaintiff has the residual functional capacity to perform work at the light exertional level with other limitations. In reaching this determination, the ALJ specifically stated that she considered the entirety of Plaintiff's symptoms, in light of the reasonable, objective medical evidence and other evidence (including Plaintiff's testimony). The ALJ also detailed several pieces of evidence that she evaluated, such as Plaintiff's medical history through her visits to Gilbreath, her visits to both consulting physicians in the record, and Plaintiff's Body Mass Index history.[6] Therefore, after careful review, the court concludes that the ALJ's fact finding is supported by substantial evidence.

### D. The ALJ Properly Considered Plaintiff's Age (And Other Concerns) Regarding the Grids Within the Medical-Vocational Guidelines.

The Medical–Vocational Guidelines, found at 20 C.F.R. Part 404, Subpart P, Appendix 2, are used to make determinations of disability based upon vocational factors and the claimant's residual functional capacity when the claimant is unable to perform vocationally relevant past work. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a). Such determinations, however, are only conclusive when all criteria of a particular rule are met. *Id.* On the other hand, when a claimant

---

[6] As stated above, the ALJ also explained her reasons for discounting the opinions of the consulting physicians.

cannot substantially perform all the exertional demands at a given RFC level, the Guidelines provide a framework for the Commissioner's decision. *See* SSR 83-12, 83-14.

Plaintiff claims that the ALJ failed to apply Medical-Vocational Guidelines 201.10, which would result in a finding that Plaintiff is under a disability under the Social Security Act. However, Rule 201.10 relates to claimants that are limited to sedentary work. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2.

Here, the ALJ determined that Plaintiff's RFC amounted to the light exertional level subject to certain limitations, and that finding is supported by substantial evidence. The ALJ further considered Plaintiff's age as "closely approaching advanced age," education as "at least a high school education and able to communicate English," and work experience as "skilled or semiskilled." And, as the ALJ correctly stated, the transferability of Plaintiff's work experience is not material since both Medical-Vocational Rule 202.14 and 202.15 result in a finding that Plaintiff is "not disabled" under the Social Security Act. Thus, after considering Plaintiff's RFC level and vocational attributes and the Vocational Expert's testimony, the ALJ applied the proper framework under the Medical-Vocational Rules to conclude that the Plaintiff is not under a disability, as defined by the Social Security Act.

## VII. Conclusion

The court concludes that the ALJ's determination that the Plaintiff is not disabled and can perform limited light work is supported by substantial evidence and the ALJ applied the proper legal standards in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum decision will be entered.

**DONE** and **ORDERED** this July 17, 2019.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE